UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHARLES THORNTON,                                                    PLAINTIFFS
on behalf of himself and all
other similarly situated individuals


v.                                              CIVIL ACTION NO. 3:07-CV-118-S


GRAPHIC COMMUNICATIONS
CONFERENCE OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS
SUPPLEMENTAL RETIREMENT AND
DISABILITY FUND, et al.                                              DEFENDANTS


## MEMORANDUM OPINION

This matter is before the court on motion of defendants, the Graphic Communications Conference

of the International Brotherhood of Teamsters Supplemental Retirement and Disability Fund (the "Plan"

or "SRDF Plan"), and the Board of Trustees for the Graphic Communications Conference of the

International Brotherhood of Teamsters Supplemental Retirement and Disability Fund ("Board of

Trustees" or "Board") (collectively, "Defendants"), to dismiss, or in the alternative, for summary

judgment (DN 13).[1] For the reasons stated herein the defendants' motion will be granted.

### BACKGROUND

The Plan is a multi-employer defined benefit pension plan, governed by the Employee Retirement

Income Security Act ("ERISA"). The Plan provides retirement benefits to employees in the graphic

---

[1] The parties have attached and referred to various documents outside the pleadings. As such, the court will construe the defendants' motion as a motion for summary judgment. The plaintiff contends that discovery is required in order to adequately rebut the evidence produced by defendants, and has filed an accompanying affidavit in accordance with Fed. R. Civ. P. 56(f). However, as set forth below, the court does not find that discovery would yield material pertinent to the issues in this action.

communications industry.  Plaintiff, Charles Thornton ("Thornton"), is and was at all relevant times, a participant in the Plan.  On February 1, 1995, Thornton elected to retire from his employment and began receiving monthly pension benefits under the Plan.  Effective February 1, 1999, the Board of Trustees, as the administrator of the Plan, amended the Plan to increase Plan participants' benefits by 9.4 percent. On December 6, 2002, the Board of Trustees adopted a benefit reduction proposal, effective April 1, 2003, to rescind the February 1, 1999 benefit increase for retirees who, like Thornton, retired from their employment prior to February 1, 1999.

On March 5, 2007, Thornton filed this action on behalf of himself and all other individuals who received Plan benefits prior to February 1, 1999 and experienced a reduction in those benefits as a result of the April 1, 2003 amendment.  Count One of Thornton's First Amended Class Action Complaint alleges that by rescinding the February 1, 1999 benefit increase provided to those employees who had retired prior to February 1, 1999, the Plan and the Board of Trustees violated the anti-cutback rule set forth in ERISA § 204(g), 29 U.S.C. § 1054(g).[2]  Count Two alleges that the Board of Trustees, in taking such action, breached their fiduciary duty by failing to administer the Plan in accordance with ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).[3]

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d

---

[2] Thornton brings Count One under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides that a participant or beneficiary may bring a civil action to "enjoin any act or practice which violates any provision of [ERISA]," and ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which allows a  participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan."

[3] Thornton brings Count Two under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides that a participant or beneficiary may bring a civil action "to enjoin any act or practice which violates [ERISA], or... to obtain other appropriate equitable relief... to redress such violations or... to enforce any provisions of [ERISA]."

1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.*  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The ERISA anti-cutback rule provides that an *accrued benefit* "may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g).  The ERISA anti-cutback rule is substantively identical to, and is interpreted in the same manner as, the Internal Revenue Code anti-cutback rule, which provides that "a plan shall be treated as not satisfying the requirements of this section if the *accrued benefit* of a participant is decreased by an amendment of the plan." 26 U.S.C. § 411(d)(6)(emphasis added).[4]  The ultimate issue in this action is whether, for purposes of the ERISA anti-cutback rule, a benefit increase in an ERISA governed plan provided to a plan participant who retired before such increase was added to the plan is an "accrued benefit" within the meaning of ERISA.

In the case of a defined benefit plan, like the SRDF Plan, ERISA defines an "accrued benefit" as "the individual's accrued benefit determined under the plan and... expressed in the form of an annual

---

[4] *See Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1144 (3rd Cir. 1993) ("When interpreting ERISA's provisions... we sometimes have the benefit of yet another source.  Section 204(g), like many other sections of ERISA, has a mirror-like counterpart in the Internal Revenue Code... 26 U.S.C. § 411(d)(6).  Therefore, when interpreting Section 204(g) of ERISA, in addition to the statute's legislative history, we may also look for guidance to sources which interpret its IRC counterpart - Section 411(d)(6)").

benefit commencing at normal retirement age." 29 U.S.C. 1002(23)(A). The Internal Revenue Code similarly defines "accrued benefit" as, in the case of a defined benefit plan, "the employee's accrued benefit determined under the plan and... expressed in the form of an annual benefit commencing at normal retirement age." 26 U.S.C. 411(a)(7)(A)(i).

In *Board of Trustees of the Sheet Metal Workers' National Pension Fund v. Commissioner of Internal Revenue*, 318 F.3d 599 (4th Cir. 2003), the Fourth Circuit considered whether a Cost of Living Adjustment ("COLA") provided to employees under the terms of the Sheet Metal Workers' National Pension Fund plan was an "accrued benefit." In considering the definition of "accrued benefit" the court noted:

> Although this definition limits the common understanding of an "accrued benefit" - i.e., any benefit... accumulated over time - it does not specifically describe how to determine whether a given benefit for a plan participant is an "accrued benefit"... Rather the statutory definition is a signpost directing us to look to the terms of the plan at issue. The only textual limit in § 411(a)(7)(A)(i) is that the accrued benefit must be "expressed in the form of an annual benefit commencing at normal retirement age."

318 F.3d at 602. The Fourth Circuit looked to the context in which "accrued benefit" is defined and noted:

> Section 411 ensures the eventual payout of (1) a retirement benefit (2) created by contributions made the employer, by the employees, or by both (3) **in accordance with the plan in effect while the employee works in the service of the employer**... Thus, when § 411(a)(7)(A)(i) refers to "accrued benefit," it refers to a benefit created by the accumulation of contributions and limited in its form of payment as "*determined under the plan*" and "expressed in the form of an annual benefit commencing at normal retirement age, but does not describe what a given plan participant's accrued benefit would be. The statute leaves this level of detail to plan drafters who, of course, remain bound by other provisions of ERISA and the Tax Code...

> The wide latitude given to plans in defining what counts as an "accrued benefit" does not undermine the promises of ERISA. Employees accruing benefits through plans that qualify under ERISA and the Tax Code are promised benefits upon retirement and, subject to satisfaction of conditions precedent, rightfully expect annual payments of their accrued benefits. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510-11, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)

- 4 -

*Id.* at 603 (italics in original, bolding added).

The Fourth Circuit then looked to the terms of the Sheet Metal Workers' National Pension Fund plan and determined that employees who retired prior to the plan amendment that first included the COLA were never promised a COLA benefit by the plan in existence during their service.  Therefore, those employees had no reason to expect that they would receive a COLA during their retirement.  *Id.* at 604.  Accordingly, the court determined that the COLA was not an "accrued benefit" as to those employees.  *Id.*

We find the Fourth Circuit's reasoning  persuasive and applicable to the action before this court. The purpose of the anti-cutback rules is to prevent employers from eliminating or reducing that which an employee has been promised and earned over time.  *See Alessi*, 451 U.S. at 510.  "In other words, if an employee works with the expectation that she is earning, and will receive, a pension benefit, an employer may not later decide not to give her the benefit that it has promised and she has earned." *Scardelletti v. Bobo*, No. JFM-95-CV-5, 1997 WL 33446689 at *10, (D.Md. Sept 8, 1997).

Like the plan at issue in *Sheet Metal Workers'*, the SRDF Plan in effect while Thornton worked in the service of his employer did not promise that he would be afforded a 9.4 percent benefit increase after his retirement, and Thornton had no reason to expect that the Plan would provide such an increase. Rather, the Plan in effect at Thornton's retirement clearly specified the precise formula for determining the amount of pension benefits that he could expect to receive upon retirement.[5]  Thornton retired with

---

[5] The Plan in effect at Thornton's retirement provided:

(B)The amount of the Basic Retirement Benefit shall be calculated as follows:

(i) For the period during which an Employee's Employer contributed to the Plan at 3% of Covered Wages, the annual Basic Retirement Benefit shall be in an amount equal to .670% of the Participant's Covered Wages earned to May 1, 1993, and .498% of the Participant's Covered Wages earned on or after May 1, 1993.

(continued...)

the fulfillment of the promise for an "annual benefit commencing at normal retirement age" but without a 9.4 percent increase beginning on February 1, 1999.  When, after Thornton separated from employment by retirement, he was given a 9.4 percent benefit increase, the increase could not have been an "accrued benefit" because it did not accumulate during his service so as to become part of his legitimate expectations at retirement. *Accord Sheet Metal Workers*', 318 F.3d at 604; *Scardelletti*, 1997 WL 33446689 at *10 (holding that a COLA benefit was not an "accrued benefit" as to pension plan participants who retired before the COLA was adopted, because those participants "did not work with the expectation that they would receive a COLA.").

Thornton argues that a Treasury Regulation adopted in 2005 compels the conclusion that the 9.4 percent benefit increase was an accrued benefit.  We disagree.  Had the amendment eliminating the 9.4 percent benefit increase been adopted on or after August 12, 2005, Thornton's argument would have more force. The Treasury Regulation, codified at 26 C.F.R. § 1.411(d)-3 provides, in pertinent part:

---

[5](...continued)

    (ii) For the period during which an Employee's Employer contributed to the Plan at a rate greater than 3% of Covered Wages, the annual Basic Retirement Benefit shall be in an amount equal to the amount described in subsection (i) of this Section **PLUS** an additional annual amount.  The additional annual amount is .343% of the Participant's Covered Wages earned to May 1, 1993, for each 1% that Contributions exceed 3%.  For Covered Wages earned on or after May 1, 1993, the additional annual amount is .417% of the Participant's Covered Wages for each 1% that Contributions exceed 3%.

    (iii) The Basic Retirement Benefit is payable at a rate of 1/12th monthly following retirement and continues for life.

Defendants' Memorandum Exhibit 1.

- 6 -

> The protection of section 411(d)(6) applies to a participant's entire accrued benefit under the plan as of the applicable amendment date, without regard to whether the entire accrued benefit was accrued before a participant's severance from employment or whether any portion was the result of an increase in the accrued benefit of the participant pursuant to a plan amendment adopted after the participant's severance from employment.

26 C.F.R. § 1.411(d)-3(a). The Treasury Department implemented this regulation in response to "judicial decisions interpreting section 411(d)(6) (or its parallel provision at section 204(g) of ERISA)." 70 Fed. Reg. 47111 (citing *Sheet Metal Workers*', 318 F.3d 599). However, the regulation provides that "the rules of this section apply to amendments adopted on or after August 12, 2005." 26 C.F.R. § 1.411(d)-3(j). In addition, the Treasury Department specifically noted that "plan amendments adopted before August 12, 2005 are to be evaluated in light of the applicable authorities without regard to these regulations." 70 Fed. Reg. 47115. Insomuch as the Plan amendment rescinding the 9.4 percent benefit increase was adopted in December 2002, this court is not compelled to conclude that rescission of the increase was in violation of ERISA.

Thornton also argues that discovery is necessary to obtain a number of documents related to the December 2002 amendment and other post-retirement benefit increases he received. However, because the determination as to whether the 9.4 percent increase was an "accrued benefit" is made with reference to the Plan terms in effect at the time of Thornton's retirement, any amendments or benefit increases issued or received after his retirement are immaterial. The Defendants have proffered the terms of the Plan in effect during Thornton's employment. *See* Defendants' Memorandum Exhibit 1. Thus, discovery relating to additional documents issued after his retirement is not necessary.

Because Thornton's 9.4 percent benefit increase was not an "accrued benefit," the Board of Trustees could rescind that increase from the benefits paid to Thornton without violating ERISA's anti-cutback rule. Accordingly, the court will dismiss Count One of Thornton's First Amended Class Action Complaint. Insomuch as the Board of Trustee's rescission of the 9.4 percent increase was not in violation

of ERISA, the Board of Trustees cannot be said to have breached their fiduciary duty.  Therefore, the court will dismiss Count Two as well.

A separate order in accordance with this opinion will be entered herein this date.